# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PHUONG NGUYEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-18-557-D |
| | ) |
| GLOBE LIFE d/b/a GLOBE | ) |
| MARKETING SERVICES, INC., | ) |
| TUNG NGUYEN, | ) |
| CUONG DUONG, and | ) |
| MICHELLE PERRY, | ) |
| | ) |
| Defendants. | ) |

## ORDER

Before the Court is Defendants' Partial Motion to Dismiss [Doc. No. 9]. Plaintiff filed a response in opposition [Doc. No. 12], and Defendants filed a reply [Doc. No. 13]. The matter is fully briefed and at issue.

## BACKGROUND

Plaintiff is a former employee of Globe Marketing Services, Inc. ("GMS").[1] Following the termination of his employment as a machine attendant/repairer, Plaintiff filed this lawsuit in which he asserts six claims for relief against GMS, two of his former shift supervisors (Tung Nguyen and Cuong Vuong), and GMS human resources director (Michelle Peery). The six causes of action include: (1) Title VII race discrimination; (2) Title VII national origin discrimination; (3) intentional infliction of emotional distress; (4)

---

[1] Defendants state that Plaintiff has improperly identified GMS as Globe Life and has misspelled the names of the other Defendants. In this Order, Defendants will be referred to as set forth in Defendants' brief.

tortious interference with employment relationship; (5) slander; and (6) invasion of privacy and false light.

Pursuant to FED. R. CIV. P. 12(b)(6), Defendants seek dismissal of Counts Three through Six. Plaintiff contends that the Petition[2] is adequate to withstand a motion to dismiss.

## STANDARD OF DECISION

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The "plausibility standard" announced in *Twombly* and *Iqbal* is not a "heightened standard" of pleading, but rather a "refined standard." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (*citing Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011)). Under the "refined standard," plausibility refers "to the scope of the allegations in the complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik*, 671 F.3d at 1191; *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (*quoting Twombly*, 550 U.S. at 570).

---

[2] The case was removed to this Court from the District Court of Oklahoma County, Oklahoma; the state court pleading nomenclature is used herein.

Further, the Tenth Circuit has noted that "[t]he nature and specificity of the allegations required to state a plausible claim will vary based on context." *Khalik*, 671 F.3d at 1191 (*quoting Kansas Penn Gaming*, 656 F.3d at 1215). "Thus, [it has] concluded the *Twombly/Iqbal* standard is 'a middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do.'" *Id*. (*quoting Robbins*, 519 F.3d at 1247).

"In other words, Rule 8(a)(2) still lives. There is no indication the Supreme Court intended a return to the more stringent pre-Rule 8 pleading requirements." *Id.* It remains true that "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (*quoting Twombly*, 550 U.S. at 555); *see also al-Kidd v. Ashcroft*, 580 F.3d 949, 977 (9th Cir. 2009) ("*Twombly* and *Iqbal* do not require that the complaint include all facts necessary to carry the plaintiff's burden.").

Finally, "[w]hile the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in [its] complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik*, 671 F.3d at 1192 (*citing Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002)). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Sanchez v. Hartley*, 810 F.3d 750, 756 (10th Cir. 2016) (*citing Twombly*, 550 U.S. at 556).

## DISCUSSION

According to his allegations, Plaintiff is a Vietnamese American male over the age of 40. He was hired by GMS on May 13, 2008 and assigned to the machine repair unit as a print helper. Subsequently, he was promoted to machine attendant/repairer, which is the position he held at the time of his termination on June 17, 2016. On June 16, 2016, Nguyen and Vuong, the shift supervisors, called a meeting with Plaintiff and two other employees to discuss issues involving the cleaning of printing machines between shifts. Plaintiff asserts that Nguyen and Vuong are also Vietnamese Americans, but they are from a different caste or region than Plaintiff. The meeting was conducted in Vietnamese. Plaintiff asserts that all five participants indicated that they understood and agreed not to leave the machines uncleaned before the next shift started.

Plaintiff contends that Nguyen and Vuong, following the meeting, met with human resources director Peery and falsely reported that Plaintiff had threatened to bring a firearm to work the next day to kill the people who were present in the meeting. Plaintiff further contends that Peery and GMS, absent a meaningful investigation, sent law enforcement personnel to Plaintiff's home. Plaintiff asserts that he "was searched and warned not to go to work." Pet. [Doc. No. 1-1 at ¶ 9]. Plaintiff alleges that law enforcement personnel told him his employment was terminated.

### A.   Count Three – Intentional Infliction of Emotional Distress

In Count Three, Plaintiff alleges that Defendants are liable for the common law tort of intentional infliction of emotional distress. He contends that "Defendants' conduct was performed in a manner outrageous in the extreme so that any reasonable person would have

4

known that emotional distress would result" and Plaintiff suffered severe emotional distress. Pet. [Doc. No. 1-1 at ¶¶ 25-26]. Although Plaintiff attempts to add additional factual support for this claim via his response to the motion to dismiss, the Court is limited to consideration of his Petition.[3]

Under Oklahoma law, an action for intentional infliction of emotional distress will lie only where there is extreme and outrageous conduct coupled with severe emotional distress. *Gaylord Entm't Co. v. Thompson*, 958 P.2d 128, 149 (Okla. 1998). To prevail on this claim, a plaintiff must prove: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff emotional distress; and (4) the emotional distress was severe. *Computer Publications, Inc. v. Welton*, 49 P.3d 732, 735 (Okla. 2002).

Recovery under this theory is "governed by very narrow standards," and the "trial court acts as a gatekeeper regarding the outrageousness of the defendant's conduct and the severity of the plaintiff's distress." *Miner v. Mid-America Door Co.*, 68 P.3d 212, 223 (Okla. Civ. App. 2002); *Welton*, 49 P.3d at 735. A plaintiff must plead facts to show that a defendant engaged in conduct that was not only unreasonable but was also "'beyond all possible bounds of decency in the setting in which it occurred'" or "'utterly intolerable in

---

[3] For the first time in his response, Plaintiff alleges that he was arrested, taken into custody by the police, and "almost" convicted of a crime. Resp. [Doc. No. 12 at 2, 5, 10, 18]. Moreover, Plaintiff asserts that Nguyen and Vuong "fabricated" or "framed up a story" that Plaintiff made threats, knowing that their "accusation of work-place violence could result in criminal charges [against Plaintiff] and [his] possible deportation to Vietnam." *Id.* at 9. These additional facts and allegations are inconsistent with those asserted in his Petition. *Hayes v. Whitman*, 264 F.3d 1017, 1025 (10th Cir. 2001). Thus, the Court will disregard them.

a civilized community.'" *Thompson v. State Farm Fire & Cas. Co.*, 34 F.3d 932, 942 (10th Cir. 1994) (*quoting Eddy v. Brown*, 715 P.2d 74, 77 (Okla. 1986)). "[C]onduct is not extreme and outrageous if it amounts to no more than mere insults, indignities, or petty oppressions." *Daemi v. Church's Fried Chicken, Inc.*, 931 F.2d 1379, 1388 (10th Cir. 1991).

Oklahoma courts have examined a variety of conduct claimed to be outrageous in the employment setting, establishing a very high bar for actionable conduct. Insufficient facts to support the tort were found where a plaintiff's female supervisor described, during a meeting, how sexual favors could be used to obtain business, made lewd remarks about the plaintiff, and openly made sexual comments in the presence of co-workers. *Anderson v. Okla. Temporary Services, Inc.*, 925 P.2d 574, 577 (Okla. Civ. App. 1996). Also deemed insufficient were allegations that the employer telephoned the plaintiff in the middle of the night and "browbeat him for hours," required him to do unnecessary work, and made derogatory sexual comments about his fiancé. *Mirzaie v. Smith Cogeneration, Inc.*, 962 P.2d 678, 682-683 (Okla. Civ. App. 1998). "In cases arising out of the workplace, Oklahoma appellate courts have found that a defendant engaged in extreme and outrageous conduct only when that defendant intentionally and persistently engaged in a course of conduct that harmed the plaintiff." *Hannah v. TCIM Services, Inc.*, Case No. CV-10-255-CVE-FHM, 2011 WL 2173862, at *3 (N.D. Okla. June 2, 2011) (collecting cases where employer's conduct was not extreme and outrageous).

Similarly, the Tenth Circuit, interpreting Oklahoma law, has emphasized the high burden to be met for liability for intentional infliction of emotional distress. *See Daemi,*

931 F.2d at 1388 (affirming the district court's decision that an employer who called an employee derogatory names based on his national origin, compelled him to terminate or otherwise eliminate his Iranian subordinates because of their national origin, required him to take a polygraph after two area stores were robbed, and belittled him publicly at seminars was not actionable in tort for intentional infliction of emotional distress). *See also Merrick v. N. Natural Gas Co., a Div. of Enron Corp.*, 911 F.2d 426, 433 (10th Cir. 1990) (an employee did not allege facts sufficient to constitute intentional infliction of emotional distress where he alleged that his supervisor harshly criticized him and yelled and cursed at him in front of others).

The alleged actions taken by GMS and Peery appear to be analogous to ordinary business decisions as opposed to what a civilized society would call atrocious, indecent, and utterly intolerable. *See Ali v. Douglas Cable Communications*, 929 F. Supp. 1362, 1391 (D. Kan. 1996) ("Deciding on the appropriate discipline for an employee accused of theft, deciding to monitor employees' telephone calls, terminating an employee, and demanding that a terminated employee leave the business premises are just examples of the kind of business actions ordinarily expected from employers."). Particularly under current circumstances in which gun violence in the workplace and elsewhere is on the rise, the employer's reaction here to an alleged threat of gun violence falls short of the "extreme and outrageous" threshold.

Further, Vuong and Nguyen's conduct, as asserted by Plaintiff in the Petition, does not appear to be "outrageous to the point that it goes beyond the bounds of decency and is utterly intolerable in a civilized society." *Monaco v. Quest Diagnostics, Inc.,* Case No. 08-

2500-KHV, 2010 WL 3843622, at *17 (D. Kan. Sept. 24, 2010) (finding that a false accusation by a co-worker that the plaintiff had threatened to kill another co-worker did not meet the threshold requirement of extreme and outrageous); *Nwakpuda v. Falley's, Inc.*, 14 F. Supp. 2d 1213, 1218 (D. Kan. 1998) (finding the plaintiff who was detained at a grocery store after being falsely identified as an individual who had previously robbed the store failed to meet the threshold showing of extreme and outrageous conduct); *Harris v. AmeriGas Propane, Inc.*, Case No. CV-12-860-RBJ-MEH, 2012 WL 7051302, at *6 (D. Colo. Dec. 5, 2012) (collecting cases where courts found false accusations of criminal conduct were not outrageous and finding that the employees' false accusations of embezzlement against the plaintiff did not constitute outrageous conduct). Plaintiff's claim against Vuong and Nguyen is based on a single incident in which Vuong and Nguyen reported the alleged threat to Peery. This alleged conduct, which took place while Plaintiff was not present, was not a persistent course of conduct rising to the level of extreme and outrageous threshold. *Hannah*, 2011 WL 2173862, at *3.

Other than the fact that his employment was terminated, the only factual basis in Plaintiff's Petition that Defendants intentionally caused him emotional distress is his allegation that the police came to his home and "searched" him. Oklahoma has rejected the contention that loss of employment is sufficient to support a claim of intentional infliction of emotional distress. "Although it is natural that an employee would suffer some sort of distress from being terminated," that is not, in itself, sufficient to support the extreme and outrageous conduct required. *Smith v. Farmers Coop. Ass'n of Butler*, 825 P.2d 1323, 1328 (Okla. 1992). Further, this Court has previously dismissed an intentional infliction

8

of emotional distress claim related to an allegedly insufficient investigation and improper detention. *See Barnes v. City of Okla. City ex rel. Okla. City Police Dep't*, Case No. CIV-10-1338-D, 2011 WL 5326251, at *4-5 (W.D. Okla. Nov. 3, 2011) (finding that although the defendant detective may have exercised poor judgment or been negligent, the alleged conduct could not "reasonably be regarded as beyond the bounds of decency and intolerable in a civilized society."); *see also Wright v. Montgomery Ward & Co., Inc.*, 814 F. Supp. 986, 991-992 (D. Kan. 1993) (allegations that a department store falsely accused and investigated an employee for theft, although "unfortunate and surely upsetting to say the least," were not "at all close to rising to the required level of intolerability.").

Plaintiff's Petition fails to contain sufficient factual allegations that Peery or GMS engaged in any conduct to intentionally inflict emotional distress upon Plaintiff. Assuming Vuong and Nguyen fabricated the threat, Plaintiff has offered no facts suggesting that Peery and GMS knew or should have known that the reported threat was false or that Peery otherwise acted improperly.

Even if Plaintiff could meet the threshold requirement of showing extreme and outrageous conduct by Vuong and Nguyen and that they acted intentionally, Plaintiff has not pled facts to show that the emotional distress he suffered was "so severe that no reasonable [person] could be expected to endure it." *Welton*, 49 P.3d at 736 (*quoting Breeden v. League Services Corp.*, 575 P.2d 1374, 1377-1378, n. 6 (Okla. 1978)). The intensity and duration of the distress are factors to be considered. *Id.*

Plaintiff makes no factual allegations regarding the intensity or duration of the distress he suffered. He merely states, in a conclusory fashion, that Defendants caused him

9

"severe emotional distress" and damage to his "psychological well-being." Pet. [Doc. No. 1-1 at ¶¶ 26-27]. These bare assertions, without more, are not sufficient. *See Peterson v. Grisham*, Case No. CIV-07-317-RAW, 2008 WL 4363653, at *8 (E.D. Okla. Sept. 17, 2008) (finding the plaintiffs had not presented enough facts to plausibly allege severe emotional distress where the complaint contained the label "severe emotional distress" with nothing more); *Wheeler v. Spirit Aerosystems, Inc.,* Case No. CV-13-0421-CVE-TLW, 2013 WL 5520012, at *6 (N.D. Okla. Oct. 1, 2013) (the plaintiff's conclusory allegation of severe emotional distress did not comply with *Twombly*). Accordingly, Count Three is dismissed pursuant to FED. R. CIV. P. 12(b)(6).

    B.    **Count Four – Tortious Interference with Employment Relationship**

Plaintiff's claim for tortious interference with an employment relationship is asserted only against the individual defendants. Resp. [Doc. No. 12 at 8]. Upon examination of Plaintiff's Petition, the Court finds only conclusory allegations of the elements of this asserted cause of action. Plaintiff has failed to present sufficient factual allegations to show that Peery was acting in bad faith and outside the scope of her employment with GMS in deciding to terminate Plaintiff's employment. *Martin v. Johnson*, 975 P.2d 889, 896-897 (Okla. 1998); *Ice v. Okla. ex rel. Okla. Dep't of Consumer Credit*, Case No. CIV-16-1097-D, 2017 WL 2351008, at *7 (W.D. Okla. May 30, 2017); *Sanders v. Okla. ex rel. Okla. Workers' Comp. Comm'n*, Case No. CIV-15-0703-HE, 2016 WL 1737135, at *4 (W.D. Okla. May 2, 2016). Further, the Petition alleges nothing that would suggest Vuong or Nguyen, who are also Vietnamese American males, had some

personal interest or "separate agenda of their own." *Sanders*, 2016 WL 1737135, at *4. Accordingly, Count Four is dismissed.

### C. Count 5 – Slander

Plaintiff in his response acknowledges that Peery's communications with law enforcement were privileged and consents to dismissal of this claim against Peery. Resp. [Doc. No. 12 at 14]. However, he asserts that his slander claim against Nguyen, Vuong, and GMS is viable. The Court disagrees. An essential element of Plaintiff's slander claim – publication – is missing.

Plaintiff alleges that false "reports, emails and text messages were disseminated vis-à-vis the Globe Life system." Pet. [Doc. No. 1-1 at ¶ 38]. A statement made within a company by one employee to another employee within the company does not constitute publication in Oklahoma. *See Magnolia Petroleum Co. v. Davidson*, 148 P.2d 468, 471 (Okla. 1944) (finding no publication where the alleged defamatory words regarding a discharged employee were spoken by supervisory employees in the presence and hearing of a fellow employee only); *Starr v. Pearle Vision, Inc.*, 54 F.3d 1548, 1553 (10th Cir. 1995) ("The threshold conclusion in *Magnolia Petroleum* that intracorporate communications do not constitute 'publications' means that liability cannot turn on the content of, or intent behind, the intracorporate communication.").

Plaintiff's Petition does not allege that Nguyen, Vuong, or GMS communicated a false report to any third person outside GMS.[4] Simply put, these were intracorporate communications. Accordingly, Count Five is dismissed.

### D. Count Six – Invasion of Privacy and Casting in False Light

Plaintiff's false light invasion of privacy claim against Peery fails for the same reasons as his slander claim. Peery's communications with law enforcement were privileged. Whether a communication is privileged is a question of law for the Court. *Springer v. Richardson Law Firm*, 239 P.3d 473, 475 (Okla. Civ. App. 2010). In Oklahoma, a communication made in a "judicial proceeding or any other proceeding authorized by law" is privileged and exempt from libel exposure. OKLA. STAT. tit. 12, § 1443.1. The privilege applies "regardless of whether [the communications] are true or false." *Stricklen v. O.I.P.M., L.L.C.*, 394 P.3d 290, 292 (Okla. Civ. App. 2017). "The underlying public policy of this absolute privilege is to assure a citizen utmost freedom in reporting suspected wrongdoings." *White v. Basnett*, 700 P.2d 666, 668 (Okla. Civ. App. 1985) (finding that a citizen's complaint against a police officer was absolutely privileged under OKLA. STAT. tit. 12, § 1443.1).

The tort of false light is qualified by the same privileges that apply to claims for defamation or slander. *See* RESTATEMENT (SECOND) OF TORTS § 652F ("The circumstances under which there is an absolute privilege to publish matter that is an

---

[4] Further, a finding of no claim for slander on the part of GMS employees "conclusively negates the liability" of GMS, the employer. *Hooper v. Clements Food Co.*, 694 P.2d 943, 945 (Okla. 1985).

invasion of privacy are in all respects the same as those under which there is an absolute privilege to publish matter that is personally defamatory."); RESTATEMENT (SECOND) OF TORTS § 652G ("Under any circumstances that would give rise to a conditional privilege for the publication of defamation, there is likewise a conditional privilege for the invasion of privacy.").

Further, the alleged statements made by Peery, Vuong, and Nguyen are not sufficiently "public" to satisfy the publicity element of false light invasion of privacy. "Oklahoma applies the RESTATEMENT (SECOND) OF TORTS when assessing whether a statement made to a group of people constitutes 'publicity.'" *Hadnot v. Shaw*, 826 P.2d 978, 986, n. 31 (Okla. 1992) (finding that a "statement to a single individual is not enough 'publicity' to make one's claim actionable … for harm from placing a person in a false light"). The Restatement defines "publicity" as a communication that "is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge … [A] communication that reaches, or is sure to reach, the public." RESTATEMENT (SECOND) OF TORTS § 652D. It is not an invasion of privacy "to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons." *Id.*

Peery's communication to law enforcement is insufficient to constitute publicity. Similarly, Vuong and Nguyen's communications to Peery about Plaintiff do not suffice. *See Thomas v. City of Bartlesville, Okla.,* Case No. CV-11-0389-CVE-PJC, 2011 WL 5119518, at *4 (N.D. Okla. Oct. 28, 2011) (granting a motion to dismiss a claim for invasion of privacy where the plaintiff's personnel file was disclosed to co-employees "for

13

the purpose of making a personnel decision" and there was "no basis to infer that the City made an improper disclosure of [the] plaintiff's personal information to the general public or communicated information about [the] plaintiff in such a way that it was likely to reach the general public"); *Taverna v. First Wave, Inc.*, Case No. CV-10-129-CVE-FHM, 2010 WL 2902240, at * 4 (N.D. Okla. July 22, 2010) (granting a motion to dismiss where the relevant statement was made to the "entire engineering staff" as opposed to the general public); *Eddy v. Brown*, 715 P.2d 74, 78 (Okla. 1986) (no publicity in the sense of a disclosure to the general public where "only a small group of co-workers were made privy to [the plaintiff's] private affairs").

Plaintiff's Petition only identifies a small group of individuals to whom the allegedly false statements were communicated. Plaintiff alleges that the false "reports, emails and text messages were disseminated vis-à-vis the Globe Life system." Pet. [Doc. No. 1-1 at ¶ 38]. Again, the Globe Life system is not a public forum. Plaintiff has not alleged in his Petition that false statements were communicated to the general public by any Defendant. Moreover, Plaintiff's vague, conclusory assertions in his response that "members of the Vietnamese community" and "some of Plaintiff's neighbors," became aware of the alleged false allegations, even if they could be properly considered, are not sufficient to state a claim for false light invasion of privacy. Resp. [Doc. No. 12 at 20]. Accordingly, Count Six is dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' Partial Motion to Dismiss [Doc. No. 9] is GRANTED. Counts Three, Four, Five, and Six are dismissed without prejudice.

**IT IS SO ORDERED** this 15th day of January 2019.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE