## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

PHUONG NGUYEN,          )
                                  )
          Plaintiff,      )
                                  )
v.                          )        Case No. CIV-18-557-D
                                  )
GLOBE LIFE d/b/a GLOBE      )
MARKETING SERVICES, INC.,  )
TUNG NGUYEN,           )
CUONG DUONG, and       )
MICHELLE PERRY,        )
                                  )
          Defendants.    )

## ORDER

Before the Court is a Motion for Summary Judgment filed by Defendant Globe Marketing Services, Inc. ("GMS") [Doc. No. 27]. Plaintiff filed a response in opposition [Doc. No. 30], and GMS filed a reply [Doc. No. 34]. The matter is fully briefed and at issue.

## BACKGROUND

Plaintiff, a former employee of GMS, filed this lawsuit following the termination of his employment as a machine attendant/repairer. Plaintiff originally asserted six claims for relief against GMS, two of his former shift supervisors (Tung Nguyen and Cuong Vuong), and the human resources director at GMS (Michelle Peery).[1] Defendants filed a partial

---

[1] Defendants have indicated that Plaintiff misspelled their names. In this Order, the Court will refer to Defendants as they are set forth in Defendants' briefs.

motion to dismiss, and the Court dismissed Counts Three through Six. [Doc. No. 14]. Thus, the claims against the individual defendants have been dismissed.

GMS asserts that it is entitled to summary judgment on Plaintiff's Title VII race and national origin discrimination claims. Specifically, GMS asserts that Plaintiff failed to exhaust his administrative remedies as to his claim that GMS created a hostile work environment. Further, GMS contends that Plaintiff's claims fail under the *McDonnell Douglas* framework. Finally, GMS asserts that Plaintiff does not have a viable national origin discrimination claim based on his region of origin.

## STANDARD OF DECISION

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Hiatt v. Colo. Seminary*, 858 F.3d 1307, 1315 (10th Cir. 2017) (quoting FED. R. CIV. P. 56(a)). A dispute is genuine "if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way," and it is material "if under the substantive law it is essential to the proper disposition of the claim." *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013) (internal quotation marks omitted). At the summary judgment stage, the Court views the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Williams v. FedEx Corp. Services*, 849 F.3d 889, 896 (10th Cir. 2017).

"The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670–71 (10th Cir. 1998) (citing *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).   If the movant meets that burden, the nonmovant must "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."   *Adler*, 144 F.3d at 671; *see also* FED. R. CIV. P. 56(c)(1)(A).  To accomplish this, the nonmovant must identify facts by reference to the pleadings, depositions, other discovery materials, exhibits, or affidavits.   *See Id.*   The Court is not limited to the cited materials, but rather may consider other materials in the record.  FED. R. CIV. P. 56(c)(3).  The Court's inquiry is whether the facts and evidence of record present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).  Unsupported conclusory allegations are not sufficient to defeat summary judgment.  *Matthiesen v. Banc One Mortg. Corp.*, 173 F.3d 1242, 1247 (10th Cir. 1999).

## DISCUSSION

### Statement of Facts[2]

Plaintiff is a Vietnamese-American male who was employed by GMS from May 13, 2008 to June 17, 2016.  At the time of his termination, Plaintiff worked as a second-shift machine operator/envelope press adjuster in the production facility, where the printing and marketing operations at GMS are conducted.   On June 16, 2016, Nguyen and Vuong, the shift supervisors, called a meeting with Plaintiff and two other employees (Luan Hoang

---

[2] This statement includes material facts presented by both parties that are supported as required by FED. R. CIV. P. 56(c)(1).  If a party has asserted a fact, or asserted that a fact is disputed, but has failed to provide necessary support, the assertion is disregarded.  All facts are stated in the light most favorable to Plaintiff.

and Huan Huu Hoang[3]) to discuss issues involving the cleaning of printing machines between shifts.  The employees at the meeting were Vietnamese-Americans, and the meeting was conducted in Vietnamese.

The parties dispute what transpired at the meeting.  The following morning, on June 17, 2016, Nguyen, Vuong, and Luan Hoang reported to GMS Envelope Manager Stephen Conner that Plaintiff became angry during the meeting and made the following threat:  "all die tomorrow."  Peery's Aff. at ¶ 6 [Doc. No. 27-3]; Conner's Aff. at ¶ 3 [Doc. No. 27-5]; Nguyen's Statement [Doc. No. 27-6]; Vuong's Statement [Doc. No. 27-7].  Conner and GMS Envelope Director Chris Baker relayed the incident to Peery, who spoke with Nguyen and Vuong separately and confirmed their reports.  Nguyen and Vuong prepared written statements.  Vuong also reported that Plaintiff had stated "wait and see tomorrow."  Vuong's Statement [Doc. No. 27-7].

Plaintiff contends that he was not angry, and that he did not yell, lose his temper, or make any threatening remark at the meeting.  Plaintiff's brother-in-law, Huan Huu Hoang, was the only other participant at the meeting; his affidavit indicates that he continued to work at GMS for a year after the meeting, and no one ever contacted him for a statement. He states that "[a]t no time during or after the meeting did I hear . . . [Plaintiff] make a statement of threat to any person or the company."  Hoang's Aff. at ¶ 5 [Doc. No. 30-3].

Conner, Baker, and Peery called GMS Senior Director Tamatha Belton and advised her of the employees' reports that Plaintiff had threatened them.  During the phone

---

[3] Huan Huu Hoang is Plaintiff's brother-in-law; he is married to Plaintiff's sister.

conversation, "it was determined that GMS would terminate [Plaintiff's] employment." Peery's Aff. at ¶ 9 [Doc. No. 27-3].  During that same phone call, "it was also determined that GMS would release its entire working staff of approximately 150 people from the building" and close operations for the day.  *Id*. at ¶ 10.  Additionally, eighty employees were told not to report for the second and third shifts.

Before contacting law enforcement, Peery asserts that she attempted to call Plaintiff seven or eight times, but Plaintiff did not answer.  Conner asserts that he reached out to Plaintiff via text message, but he received no response from Plaintiff.  Plaintiff disputes these attempts to contact him.

After failing to reach Plaintiff, Peery called 911 and reported that Plaintiff had made a threat of violence against GMS employees.  A police officer met with Plaintiff at his residence and advised him that his employment with GMS had been terminated.

Peery asserts that the decision by GMS to contact law enforcement and to terminate Plaintiff's employment was influenced by incidents of workplace violence, at a national and regional level, "including the violent murder in 2014 of a Vaughan Foods employee by her co-worker in Moore, Oklahoma."  *Id*. at ¶ 13.

In his deposition, Plaintiff testified that neither his shift supervisor, Nguyen, nor Conner, who supervised the employees of all three shifts, treated him differently because he was Vietnamese.  In fact, Nguyen is also Vietnamese, and Plaintiff indicated that they only discussed work.  Plaintiff also acknowledged that if he had any complaints, he could have voiced those complaints to Conner or someone in HR.  Based on GMS records, Plaintiff never reported any harassment or discrimination by anyone.

At the time of Plaintiff's termination, almost two-thirds of the employees at GMS were members of a minority group, and close to one-third were Vietnamese. Further, of the twenty-one employees in Plaintiff's department, Conner was the only non-minority employee, and all but one of the minority employees were Vietnamese. The individual hired by GMS to fill Plaintiff's position following his termination was also Vietnamese.

Plaintiff stated in his deposition that he was treated differently because he is Vietnamese, and that it was unfair of GMS to terminate him without hearing his side of the story. Plaintiff asserted that "a long time ago" GMS terminated an employee who was Mexican, but only after they held a meeting to address the issue. [Doc. No. 27-1 at 65].

Plaintiff received a copy of the GMS Employee Handbook when he was hired. Included in the handbook is a subsection on "Violence in the Workplace," which provides that "[a]cts of violence including . . . behavior toward others or company property by [an] employee . . . will not be tolerated." [Doc. No. 27-10 at 2]. "Violation of this policy will result in disciplinary action, up to and including immediate discharge." *Id.* Likewise, Plaintiff received a copy of the GMS Code of Business Conduct and Ethics, which also indicates that "[v]iolence and threatening behavior are not permitted." [Doc. No. 27-11 at 2].

On August 9, 2016, Plaintiff filed a charge of discrimination against GMS with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff listed June 17, 2016 as the date that discrimination based on race and national origin occurred. In the charge, Plaintiff stated that he "was falsely accused of threatening an employee on Company property" and because of his "race, national origin and limited English [he] was not given

6

a chance to defend [himself]." [Doc. No. 27-13]. He further asserted that GMS did not investigate the incident "from which the false accusations were made." *Id*. The EEOC charge does not allege or refer to any incidents of discrimination other than the circumstances surrounding Plaintiff's discharge on June 17, 2016.

Plaintiff's limited English did not prevent Peery or other GMS employees from communicating with Plaintiff. GMS had multiple employees, including Plaintiff's supervisor (Nguyen), who spoke English and Vietnamese and could translate upon request. Having received reports from three of the five meeting participants of Plaintiff's alleged threat, and concerned for its employees' safety, GMS terminated Plaintiff based on its strict anti-violence policy and to prevent Plaintiff from returning to GMS. Regardless of whether Plaintiff disputed the threat, GMS would have made the same decision. GMS also asserts that it is immaterial that Plaintiff's brother-in-law did not give a statement regarding Plaintiff's alleged threat.

**Analysis**

**I.      Although Plaintiff did not properly exhaust his administrative remedies as to his hostile work environment claim, GMS waived this affirmative defense by failing to assert it in a responsive pleading.**

GMS asserts that Plaintiff failed to exhaust his administrative remedies as to his claim that GMS created a hostile work environment. Although Plaintiff primarily refers to his termination on June 17, 2016 in the Complaint,[4] he also generally alleges a "pattern

---

[4] This case was removed to federal court. The parties refer to Plaintiff's original pleading as a "Petition"; in keeping with federal nomenclature, the Court will hereinafter use "Complaint."

and practice of discrimination," and asserts that he "was required to work in a place and under conditions where bias and prejudice against members of his race existed."  Compl. at ¶ 9 [Doc. No. 1-1].  Further, he alleges "that because of this discriminatory atmosphere he was harassed and treated poorly on the job [and] . . . denied the use and access of some of the facilities afforded to his co-workers."  *Id*.  However, the facts and claims alleged in Plaintiff's EEOC charge do not support, or even reference, a hostile working environment claim.[5]  *See* EEOC Charge [Doc. No. 27-13].

The Court does not construe Plaintiff's EEOC charge as alleging a hostile working environment claim.  Plaintiff did not mark the continuing action box.  He listed the dates of discrimination as one date—June 17, 2016.  Further, Plaintiff's description of the "particulars" relates only to a single, discrete incident—his termination on June 17, 2016.

In *Lincoln v. BNSF Ry. Co*., 900 F.3d 1166, 1185 (10th Cir. 2018), the Tenth Circuit concluded that its precedent—concerning the filing of an EEOC charge as a jurisdictional prerequisite to suit—"was no longer correct."  It concluded that a plaintiff's failure to file an EEOC charge merely permits the employer to raise an affirmative defense of failure to exhaust, but does not bar a federal court from assuming jurisdiction over the claim. *Id*. The Supreme Court recently confirmed this in *Fort Bend Cty., Texas v. Davis*, 139 S. Ct. 1843, 1851 (2019), holding that the EEOC filing requirement is non-jurisdictional.

---

[5] Mindful that EEOC charges are traditionally filed by non-attorneys, the Court has liberally construed it in its review.  *See, e.g., Smith v. Cheyenne Ret. Investors L.P.*, 904 F.3d 1159, 1166 (10th Cir. 2018).

In most cases, the distinction between a jurisdictional requirement and an affirmative defense is immaterial. *Smith v. Cheyenne Ret. Investors L.P.*, 904 F.3d 1159, 1164 (10th Cir. 2018). "The characterization is important . . . when the defendant has waived or forfeited the issue . . . ." *McQueen ex rel. McQueen v. Colo. Springs Sch. Dist.*, 488 F.3d 868, 873 (10th Cir. 2007). If a party fails to assert a timely objection, the point may be forfeited. *Davis*, 139 S. Ct. at 1852.

Although Plaintiff did not properly exhaust his administrative remedies in connection with his hostile work environment claim, GMS waived this affirmative defense by failing to assert it in a responsive pleading. *See Id.; see also Lott v. City of Oklahoma City*, Case No. CIV-18-1176-PRW, 2020 WL 912748, at *2 (W.D. Okla. Feb. 25, 2020); *Redmon v. Gen. Motors Co.*, Case No. 18-2087-DDC-KGG, 2019 WL 2393166, at *17–18 (D. Kan. June 6, 2019); GMS's Answer at 6–9 [Doc. No. 15]. Accordingly, GMS's motion for summary judgment on this basis is denied.

## II.   Plaintiff has presented no evidence that his work environment at GMS was permeated with discriminatory intimidation, ridicule, or insult prior to his termination.

Title VII prohibits employment discrimination based on race or national origin. *Herrera v. Lufkin Indus., Inc.*, 474 F.3d 675, 680 (10th Cir. 2007). Employers also violate Title VII if they subject an employee to a racially hostile work environment or one permeated with national origin discrimination. *Id*. To have a viable hostile working environment claim, Plaintiff must show that "'under the totality of the circumstances (1) the harassment was pervasive or severe enough to alter the terms, conditions, or privilege of employment, and (2) the harassment was racial or stemmed from racial animus.'" *Witt*

*v. Roadway Express*, 136 F.3d 1424, 1432 (10th Cir. 1998) (quoting *Bolden v. PRC Inc*., 43 F.3d 545, 551 (10th Cir. 1994)).

Thus, "[a]n employer creates a hostile work environment when 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Morris v. City of Colorado Springs*, 666 F.3d 654, 664 (10th Cir. 2012) (quoting *Hall v. U.S. Dep't of Labor*, 476 F.3d 847, 851 (10th Cir. 2007)). Further, "[a] plaintiff must show that the environment was both objectively and subjectively hostile or abusive." *Morris*, 666 F.3d at 664 (internal quotation marks and citation omitted). Courts assess "'the objective severity of the harassment from the perspective of a reasonable person in the plaintiff's position, *considering all the circumstances*.'" *Id.* (quoting *Harsco Corp. v. Renner*, 475 F.3d 1179, 1187 (10th Cir. 2007)) (emphasis in original).

Plaintiff has not presented sufficient evidence to survive summary judgment on his hostile working environment claim. In fact, he has presented no evidence that his work environment at GMS was permeated with discriminatory intimidation, ridicule, or insult prior to his termination on June 17, 2016. Nor has Plaintiff presented any evidence to show that his working environment was both objectively and subjectively hostile or abusive prior to his termination.

In his deposition, Plaintiff testified that neither his shift supervisor, Nguyen, nor Conner, who supervised the employees of all three shifts, treated him differently because he is Vietnamese. In fact, Nguyen is also Vietnamese, and Plaintiff indicated that they

only discussed work.  Plaintiff also acknowledged that if he had any complaints, he could have voiced those complaints to Conner or someone in HR.  Based on GMS records, prior to his termination Plaintiff never reported any harassment or discrimination by anyone.

At the time of Plaintiff's termination, almost two-thirds of GMS employees were members of a minority group, and close to one-third were Vietnamese.  Further, of the twenty-one employees in Plaintiff's department, Conner was the only non-minority employee, and all but one of the minority employees were Vietnamese.  The individual hired by GMS to fill Plaintiff's position following his termination was also Vietnamese. Accordingly, the Court finds that there is insufficient evidence from which a reasonable jury could conclude that GMS subjected Plaintiff to a racially hostile working environment or one permeated with discriminatory intimidation, ridicule, and insult.  Thus, GMS's motion for summary judgment on this basis is granted.

III.   **There is no evidence to support an inference that Plaintiff's termination was because of his race.**

Plaintiff's Title VII claim of discriminatory termination is governed by the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973).  A plaintiff must first set forth a prima facie case of discrimination.  That is, Plaintiff must establish that (1) he is a member of a protected class, (2) he suffered an adverse employment action, (3) he was qualified for the position at issue, and (4) his constructive discharge occurred under circumstances that give rise to an inference of unlawful discrimination.  *Plotke v. White*, 405 F.3d 1092, 1100 (10th Cir. 2005).  A plaintiff's prima facie burden is described as "*de minimis*."  *Id*. at 1101.  (internal quotation marks and

citation omitted).   "'The critical prima facie inquiry in all cases is whether the plaintiff has demonstrated that the adverse employment action occurred under circumstances which give rise to an inference of unlawful discrimination.'"   *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 969 (10th Cir. 2017) (quoting *Kendrick v. Penske Transp. Services, Inc.*, 220 F.3d 1220, 1227 (10th Cir. 2000)).

If Plaintiff presents sufficient evidence, the burden shifts to GMS to present a justifiable, non-discriminatory reason for its conduct.   *Kendrick*, 220 F.3d at 1229–30.   If it does, then the burden of proof shifts back to Plaintiff, who must show that the proffered justification for GMS's actions is a mere pretext for unlawful employment discrimination. *McDonnell Douglas*, 411 U.S. at 804.

Here, GMS concedes that Plaintiff belongs to a protected class, that he suffered an adverse employment action, and that he was qualified for the position at issue.   [Doc. No. 27 at 17].   GMS asserts, however, that there is no evidence to support an inference that Plaintiff's termination was in any way because of his race.   The undisputed facts demonstrate that GMS terminated Plaintiff's employment after receiving reports from three of the five meeting participants that Plaintiff had threatened them with the statement that they would "all die tomorrow."   Peery's Aff. at ¶ 6 [Doc. No. 27-3]; Conner's Aff. at ¶ 3 [Doc. No. 27-5]; Nguyen's Statement [Doc. No. 27-6]; Vuong's Statement [Doc. No. 27-7].   Concerned for the safety of its employees and based on its strict anti-violence policy,[6]

---

[6] GMS's anti-violence policy provides that "[a]cts of violence . . . by [an] employee . . . will not be tolerated," and that a violation of the policy "will result in disciplinary action, up to and including immediate discharge."   [Doc. No. 27-10 at 2].   Moreover, GMS also prohibited threats of violence.   [Doc. No. 27-11 at 2].

GMS terminated Plaintiff's employment.  There is no evidence linking Plaintiff's discharge to a racially discriminatory motive. *Khalik v. United Air Lines,* 671 F.3d 1188, 1194 (10th Cir. 2012).

Likewise, Plaintiff's assertion that he was not given a chance to defend himself because of his race and national origin lacks evidentiary support in the record.  There is no evidence that race or national origin played any part in the way GMS conducted its investigation.  The three employees who reported the threat were Vietnamese. In his deposition, Plaintiff testified that neither his shift supervisor, Nguyen, nor Conner, who supervised the employees of all three shifts, treated him differently because he was Vietnamese.  Plaintiff does not tie the alleged inadequacies of the investigation to any discriminatory intent.

## IV.   GMS has presented a justifiable non-discriminatory reason for Plaintiff's termination.

Moreover, even if Plaintiff had made his prima facie showing, GMS has satisfied its burden of presenting a justifiable, non-discriminatory reason for Plaintiff's termination. GMS contends, and the evidence reflects, that the proffered reason for Plaintiff's termination is the company's strict anti-violence policy.  The anti-violence policy at GMS expressly states that "[v]iolence and threatening behavior are not permitted."  [Doc. No. 27-11 at 2].  It further provides:

> Acts of violence including, but not limited to, behavior toward others or company property by employee or non-employees will not be tolerated.  Any instances or suggestions of violence must be reported to the employee's supervisor and/or Human Resources . . . The Company will promptly respond to any incident or suggestion of violence.  Violation of this policy will result in disciplinary action, up to and including immediate discharge.

[Doc. No. 27-10 at 2].

An employer's burden of articulating a justifiable, non-discriminatory reason for its employment action is "exceedingly light." *Montes v. Vail Clinic, Inc*., 497 F.3d 1160, 1173 (10th Cir. 2007). The employer's burden is one of production only. *Lewis v. D.R. Horton, Inc*., 375 F. App'x 818, 825 (10th Cir. March 24, 2010) (unpublished)[7] (citing *Mickelson v. New York Life Ins. Co*., 460 F.3d 1304, 1311 (10th Cir. 2006)).

Other courts have accepted that a legitimate, non-discriminatory reason for termination could be the violation of office policy. *See, e.g., Timmerman v. U.S. Bank, N.A*., 483 F.3d 1106, 1120 (10th Cir. 2007) (finding the defendant had produced a legitimate, non-discriminatory reason for termination where the bank's policy made it clear that termination could result from a branch manager refunding overdraft fees on branch employees' accounts without approval); *Raymond v. Select Specialty Hosp. – Tulsa/Midtown, LLC*, 375 F. Supp. 3d 1203, 1213 (N.D. Okla. 2019) (concluding that the defendants had met their "exceedingly light" burden to proffer a legitimate, non-discriminatory reason where the defendants contended the plaintiff was terminated in accordance with the employee handbook, which listed sleeping while on duty as unacceptable behavior justifying immediate termination). The decision by GMS to terminate Plaintiff's employment was consistent with its anti-violence policy. The Court

---

[7] All unpublished opinions are cited pursuant to FED. R. APP. P. 32.1(a) and 10th CIR. R. 32.1.

concludes that the evidence cited by GMS is more than sufficient to satisfy its burden of articulating a justifiable, non-discriminatory reason for Plaintiff's termination.

**V.      GMS's decision to terminate Plaintiff's employment was not pretextual.**

Accordingly, the burden shifts to Plaintiff to show that the proffered reason is a mere pretext for discrimination; to avoid summary judgment at this stage, Plaintiff must present sufficient evidence to create a genuine factual dispute regarding pretext.  *See Montes*, 497 F.3d at 1173; *McDonnell Douglas*, 411 U.S. at 804.  To do so, Plaintiff must present evidence showing that GMS's reasons for termination are so "incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude the reasons were unworthy of belief."  *Young v. Dillon Cos.*, 468 F.3d 1243, 1249 (10th Cir. 2006).

Plaintiff contends that he did not make any threatening statements to co-workers and that his brother-in-law's testimony will support this fact.  He further asserts that GMS should have conducted a reasonable investigation by interviewing all of the employees that were present at the meeting, rather than sending a police officer to Plaintiff's home to inform him that he had been terminated from his job.  The Tenth Circuit in *Timmerman* noted, however, that the issue was not whether the decision to terminate "was wise, fair or correct, but whether [the employer] reasonably believed at the time of termination that [the employee] had violated company policy, and acted in good faith upon that belief."  *Timmerman*, 483 F.3d at 1120 (citing *Young*, 468 F.3d at 1250).  This is because Title VII does not prohibit "an employer from making hasty decisions that appear harsh," but rather forbids "decisions made with discriminatory animus."  *Id.* (citing *E.E.O.C. v. Flasher Co.*, 986 F.2d 1312, 1321 (10th Cir. 1992).   Thus, regardless of whether the story of Plaintiff's

threat was accurate or whether the investigation was one-sided, the issue is whether the decision to terminate Plaintiff's employment by GMS was made with discriminatory intent.

The evidence shows that Peery, Conner, Baker, and Belton participated in the discussion that resulted in the decision by GMS to terminate Plaintiff. The decision to terminate Plaintiff's employment was based on the company's strict anti-violence policy and reports from three employees that Plaintiff had made threatening remarks. There is no evidence of record that GMS's decision to terminate Plaintiff's employment was a pretext for discrimination.

**VI.    The undisputed facts do not support a claim for national origin discrimination.**

Plaintiff alleges in the Complaint that Nguyen and Vuong are Vietnamese-Americans like Plaintiff, but that they are from a different caste or region in Vietnam. Plaintiff further asserts that he was the only Vietnamese-American from a particular region in Vietnam in the second shift, and that minority employees like him were discriminated against and harassed by Nguyen and Vuong, the shift supervisors. GMS contends that Plaintiff's regional discrimination claim is neither factually nor legally viable. Plaintiff does not address GMS's argument in his response brief.

Aside from the conclusory statements in the Complaint, there is no evidence of record showing discrimination by GMS, Nguyen, or Vuong on the basis of Plaintiff's regional or national origin. Accordingly, because the undisputed facts do not support

Plaintiff's claim for national origin discrimination, and no reasonable jury would find for Plaintiff on this claim, the Court finds GMS is entitled to summary judgment on the claim.[8]

## CONCLUSION

Based on the foregoing, the Court finds that GMS is entitled to summary judgment on Plaintiff's Title VII race and national origin discrimination claims—Counts One and Two.  Accordingly, GMS's Motion for Summary Judgment [Doc. No. 27] is **GRANTED**, and this Order disposes of the remaining claims in this action.  A separate judgment will be issued accordingly.

**IT IS SO ORDERED** this 5th day of May 2020.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge

---

[8] Because Plaintiff's claim fails factually, it is not necessary for the Court to address the legal viability of Plaintiff's claim or whether a national origin claim can arise from so-called regional discrimination.  Discrimination on the basis of a person's regional heritage has been excluded from the coverage of "national origin" by other federal courts, including the Southern District of New York, which declined to recognize such a claim in *Dollman v. Mast Indus., Inc.*, 731 F. Supp. 2d 328, 337 (S.D.N.Y. 2010).